## No. A-CV-05-85

## *Court of Appeals of the Navajo Nation*

In the Matter of Contempt of:
**Arnold Sells**
Decided May 3, 1985

## OPINION

*Before McCabe, Chief Justice, Bradley and Tso, Associate Justices.*

On March 7, 1985, at 4:20 p.m. Arnold Sells, Fiscal Director of the Judicial Branch, was served with an order to appear on March 8, 1985, at 9:00 a.m. in Tuba City District Court and Show Cause as to why he should not be held in contempt for failure to process travel authorizations for two Tuba City Court employees.

On March 8, 1985, the Chief Justice issued a Writ of Prohibition restraining Robert B. Walters, Judge of the Tuba City District Court, from any further proceedings against Arnold Sells in regard to the travel authorizations pending a hearing on the Writ. Judge Walters was ordered to submit a brief by April 15, 1985, on why the Writ should not be made permanent. Oral argument was set for April 29, 1985.

Judge Walters neither submitted a brief nor appeared for oral argument. The Court feels that the issues involved are of sufficient significance to warrant an Opinion as well as an Order.

The Court views this case as containing two major issues:

1. The jurisidiction of the trial court to issue the Order to Show Cause; and
2. The authority of the Court of Appeals to issue a Writ of Prohibition.

7 N.T.C. §253 establishes the subject matter jurisdiction of the trial courts of the Navajo Nation and 7 N.T.C. §255 provides that "the trial court shall have power to issue any writs or orders necessary and proper to the complete exercise of its jurisdiction."

This Court affirms the principle that the Navajo Tribal Courts have inherent power to enforce their orders and uphold the dignity of the court through contempt powers. This Court further affirms the holding in the case of *In the Matter of Summary Contempt of: Leonard R. Tuchawena,* 2

Nav. R. 85 (1979), [hereafter *Tuchawena*], that the trial judge has a great deal of discretion in determining what constitutes contempt and that "Absent a clear abuse of discretion or conduct on the part of the judge which is so unreasonable as to be classified as capricious and arbitrary, this Court will not disagree with a trial judge's determination." *Tuchawena*, p. 89. The holding in *Tuchawena* does not, however, clothe a judge with authority to use the contempt powers of the court to punish actions which displease him personally or are outside the jurisdiction of the court. The use of the word "discretion" as applied to judges or courts means discretion to act within certain boundaries. For judicial discretion those boundaries are the rules and principles of law as applied to the facts of a particular case. *Black's Law Dictionary*, 5th ed.

Contempt of court is generally defined as willful disobedience of a court's orders or action which bring the authority of the court into disrespect or disregard, interferes with parties or witnesses during litigation, or otherwise obstructs the court in the administration of justice. See *Black's Law Dictionary*, 5th ed. and 17 Am. Jur. 2d Contempt §3.

In the instant case, Arnold Sells was ordered by Judge Robert B. Walters to show cause why he should not be held in ". . .Contempt of Court for your interfering with the operation of this Court and Court staff by refusing to issue travel authorization for staff's travel to Window Rock for Navajo Nation Childrens' Code orientation on March 6 and 7, 1985."

The travel of staff of the Judicial Branch is an administrative, not a judicial matter. The Chief Justice is the administrative as well as the judicial head of the Judicial Branch. See 7 N.T.C. §371; Tribal Council Resolution CO-69-58 Preamble (1) and (2) as contained in note to 7 N.T.C. § 201; Minutes of Tribal Council Discussion, October 17, 1958; Personnel Policies and Procedures of the Judicial Branch § VIII.

The minutes of the Tribal Council Discussion at the time Title 7 was being discussed contain some indication of how the Tribal Council understood the administrative duties of the Chief Justice. Laurence Davis who was the attorney advising the Tribal Council gave the following explanation of the administrative duties of the Chief Justice. What is now Title 7 of the Navajo Tribal Code was enacted with Mr. Davis' explanation unchanged.

Administrative duties of Chief Justice, Section 7. Now this section provides that the Chief Justice besides presiding over all Appeal Courts will have the work of supervising the work of all the judges. He will advise the Chairman as to whether any probationary judge should be offered a permanent appointment and as to whether any judge is falling down on the job and should be removed from office. Gentlemen, the question has frequently arisen, "To whom are the judges responsible" and it was never possible to answer that question. They were responsible to the voters

and they were responsible to the Council because the Council fixed their salaries, but there was no clear line of authority. Nobody could tell a judge, "Look here Judge so and so, you are supposed to go to work at eight o'clock in the morning instead of ten o'clock." Under this resolution the Chief Justice would definitely have the responsibility of seeing to it that the judges got to work on time and did their jobs. *Record of the Navajo Tribal Council,* October 17, 1958.

The administrative authority of the Chief Justice is a recognized principle of court administration:

Effective and consistent direction of effort and application of policy in a court system require that administrative authority within the system be clearly established. Every court unit within the system should manage its internal business in a way consistent with the general rules and policy of the system as a whole. The work of every unit should be coordinated with that of other units that stand in vertical or parallel relationship to it. The system as a whole should maintain effective external relationships with other agencies of government, with the bar, and with various segments of the public. These tasks must be performed by someone in particular. Establishing administrative responsibility consists of specifying that person and his duties and authority.

In assigning administrative responsibility in court systems, the general principle of administration should be observed that such responsibility should be vested in individuals, not groups. Effective administration requires taking risks, assuming burdens, conferring approval, imposing rebuke, and answering to others for failures. The pains and penalties inherent in asserting administrative authority are immediate and apparent, while the rewards for doing so usually come only in time and then often only in the form of private satisfaction. These characteristics of the administrative task make the group or committee an unwieldy and unreliable instrument in which to repose ultimate administrative responsiblity. American Bar Association, *Standards Relating to Court Organizations,* 1974, pp. 15-16.

The Court recognizes that American Bar Association standards in regard to court organization are not binding upon the Navajo Nation. The Court finds, however, that the adoption of the ABA Code of Judicial Conduct and the ABA Code of Professional Responsiblity is a recognition by members of the Navajo Nation Judiciary and the Navajo Nation Bar Association of the excellence of American Bar Association standards.

Pursuant to the administrative authority of the Chief Justice, as contained in the above authorities, the Chief Justice has issued certain administrative orders. One such order issued July 12, 1984, and titled "Authorization for Travel" requires that all requests for travel outside the local judicial district by Judicial Branch staff be submitted to and approved by the Chief Justice. In addition, the tribal Office of Financial Services requires the signature of either the Chief Justice or the Court Administrator before travel claims are processed and paid.

Mr. Sells is an employee of the Judicial Branch and works in the Office of the Chief Justice. His position as Fiscal Director is part of the administrative staff of the Office of the Chief Justice of the Judicial Branch. The Fiscal Director works under the direction of the Chief Justice and not the judges collectively or individually. Thus, the Order to Show Cause issued to Arnold Sells was an attempt by the trial court to hold Mr. Sells in contempt for an action not properly within the jurisdiction of the trial court or the administrative authority of the trial judge. Further, it was an attempt to hold Mr. Sells in contempt for failure to act in a situation where he is not empowered to act.

The Court holds that the Order to Show Cause in this matter exceeds both the judicial and administrative authority of the trial judge.

The Court further holds that insofar as this Opinion conflicts with that portion of *Gudac v. Marianito, et. al.,* 1 Nav. R. 385 (1978), [hereafter *Gudac*], which holds that the judges collectively control the personnel policies of the Judicial Branch; that portion of *Gudac* is overruled. That holding in *Gudac* is not in keeping with Title 7 of the Navajo Tribal Code, with the legislative history of Title 7 of the Tribal Code, or with principles of sound court administration. Further, that particular holding of *Gudac* is not in keeping with the "universally written" principles of appealability which were announced in *Gudac* for the reason that the issue of who sets the personnel policies of the Judicial Branch never appeared in the case prior to the Opinion. In addition, the *Gudac* Court's construction of Title 7 N.T.C. Subchapter 9 cannot be accepted under any principles of statutory interpretation and construction.

The next issue which the Court addresses is that of the authority of the Court of Appeals to issue the Writ of Prohibition.

Subchapter 5 of Title 7 of the Navajo Tribal Code deals with the Court of Appeals. 7 N.T.C. § 302 states:

The Court of Appeals shall have jurisdiction to hear appeals from final judgments and other final orders of the Trial Court. . . .

§ 303 of 7 N.T.C. states:

The Court of Appeals shall have the power to issue any writs or orders necessary and proper to the complete exercise of its jurisdiction, or to prevent or remedy any act of the Trial Court beyond such court's jurisdiction, or to cause the Trial Court to act where the Trial Court unlawfully fails or refuses to act within its jurisdiction.

Thus, under the statutory authority of the Navajo Tribal Code, the Court of Appeals has both appellate jurisdiction and supervisory jurisdiction. Its appellate jurisdiction is contained in 7 N.T.C. § 302 which grants the Court of Appeals the authority to hear appeals from final judgements and orders of the trial court. Its supervisory jurisdiction is contained in §

303 of N.T.C. which grants the Court of Appeals the power to issue writs. Supervisory jurisdiction is an established concept of court organization:

Supervisory jurisdiction, or the power of superintending control, over courts of lower rank in the same jurisdiction is a kind of original jurisdiction frequently conferred upon appellate courts, especially the highest court of the jurisdiction. 20 Am. Jur. 2d, Courts, § 111.

Supervisory jurisdiction may be exercised to compel action by an inferior court or to keep an inferior court within its jurisdiction, as by the issuance of a Writ of Mandamus, or a Writ of Prohibition. 20 Am. Jur. 2d Courts, § 115.

The highest appellate court should also have authority to entertain original proceedings, such as those for writ of mandamus or prohibition, in aid of performing its responsibilities as a court of review. This authority is generally and properly held to be an inherent aspect of the highest court's status as such. American Bar Association, *Standards Relating to Court Organization,* p. 34.

Additionally the concept of the supervisory jurisdiction of the Navajo Court of Appeals is sanctioned not only by Title 7 of the Tribal Code but by the legislative history of Title 7:

Section 6 speaks of the jurisdiction of the Court of Appeals. Now you know the present appeal procedure is for two judges, other than the judge who heard the case, to hear the case that is appealed. Under this new procedure there would be one judge permanently assigned to appeals, that is the Chief Justice. Now, also this would provide that the Court of Appeals would have the power to issue orders to the Lower Courts requiring the Tribal Court to refrain from exceeding its jurisdiction or to act if it failed to act. In other words, if the judge in the Tribal Court refused to do anything about a case under the present system, there is nothing you can do, but under the new system which is provided here, the Court of Appeals could issue an order and tell him to get busy. That is all in accordance with one of the principal purposes of this resolution which is to set up supervision over the judges we think we don't have at the present time, and to set up proper supervision with supervision from the judicial branch rather than interference from any other branch of the Government. *Record of the Navajo Tribal Council,* October 17, 1958. (The above is an explanation by Laurence Davis of the then proposed Court of Appeals. The Tribal Courts were established with this explanation unchanged.)

Further, the Court calls attention to Tribal Council Resolution CO-69-58, Preamble (2). This part of the Preamble to the Tribal Council Resolution, which established the Navajo Tribal Courts, states that an appellate court is needed to supervise the work of the trial courts and the trial judges.

The Court therefore holds that a Writ of Prohibition or Writ of Superintending Control is a proper exercise of the supervisory jurisdiction of the Court of Appeals. The Court further holds that the Writ of Prohibition issued in the instant matter was proper and within the authority of the Court of Appeals.

It is therefore Ordered that the Writ of Prohibition be and hereby is made permanent.